IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

SAJID F. LESLIE,                    )
                                    )
            Petitioner,             )
                                    )
    v.                              )          CV 115-130
                                    )
GLENN JOHNSON, Warden,              )
                                    )
            Respondent.             )
_____

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
_____

Petitioner, an inmate at Dooly State Prison in Unadilla, Georgia, brings the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Petitioner's § 2254 petition be **DENIED** without holding an evidentiary hearing or appointing counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.    BACKGROUND

This case challenges the validity of Petitioner's convictions for murder and arson, charges of which he was convicted by a jury in Richmond County, Georgia, after a trial conducted from January 3 through 12, 2000. Leslie v. State, 738 S.E.2d 42, 45 & n.1 (Ga. 2013). The Georgia Supreme Court provided the following description of facts underlying the offenses based on the evidence offered against Petitioner at trial:

On April 22, 1999, at approximately 11:10 p.m., police were dispatched at the request of firefighters to a parking lot adjacent to a mall in Richmond County, Georgia. Firefighters had found a car with its passenger compartment engulfed in flames. Once the fire was extinguished, authorities determined that a burned body was inside the car. Police recovered jewelry from the body, including a watch that was stopped at 11:00. Through dental records and paperwork related to the vehicle, police identified the body as being that of the victim, Ms. Hastings. The medical examiner testified that the victim was alive when the fire began and that she died from soot and smoke inhalation and from thermal burns. A forensic expert testified that the victim's clothing and components from the vehicle tested positive for the presence of gasoline. Police spoke to appellant because he had dated the victim. During his first interview with authorities on April 25, 1999, the police investigator noticed that appellant had injuries to his face and that the skin pigmentation on appellant's face was discolored. Appellant told police that he had sustained injuries to his face from falling off a motorcycle. Appellant also told the authorities that his face was burned when his carburetor backfired while he was fixing his car. The mother of appellant's son testified that earlier in the evening of the night the victim was killed, she saw appellant and he did not have any injuries to his face. The victim's 12-year-old son testified that his mother received a message from appellant on her pager at around 10:00 on the night of her death and that she left their home stating that she would return in an hour. A fire investigation expert testified that the vehicle fire that killed the victim was intentionally set using gasoline as an accelerant; that the carburetor of appellant's vehicle did not show any evidence of a backfire; and opined that the injuries to appellant's face were caused by a flash fire like the one that destroyed the victim's car and were not caused by backfire from a carburetor. At trial, appellant took the stand and denied that he had killed the victim. Appellant testified that he was at a dog fight at the time in question, but admitted that he could not provide any contact information regarding any persons who could corroborate his alibi.

Id. at 45 (footnote omitted).

Maureen Floyd and Tony L. Axam represented Petitioner at trial. (Doc. no. 8-7, p. 92.) Although a Richmond County grand jury indicted, and the trial jury convicted, Petitioner on charges of malice murder, felony murder, and arson during the commission of a crime, the felony murder count was vacated by operation of law. Leslie, 738 S.E.2d at 49 n.1. The trial court sentenced Petitioner to life plus twenty years on the malice murder and

arson charges.  Id.  Petitioner filed a motion for a new trial on February 9, 2000, and after

new appellate counsel, Holly Chapman, was appointed in 2011, Petitioner filed an amended

motion for new trial on December 9, 2011.  Id.; (see also doc. no. 8-18, p. 94.)

Petitioner raised several ineffective assistance of trial counsel claims in his motion for

a new trial, including challenges to the preparation for and presentation of evidence at trial,

which did not include an arson expert to refute the conclusions of the state arson expert.  (See

doc. no. 8-18, pp. 94-116; doc. no. 8-19, pp. 1-18.)  Ms. Chapman also challenged the

sufficiency of the evidence upon which the convictions were based and the lengthy delay in

obtaining a ruling on the motion for a new trial.  (See doc. no. 8-18, pp. 94-116; doc. no. 8-

19, pp. 1-18.)  The trial court held a hearing on December 13, 2011, and after denying the

motion for a new trial from the bench, entered a written order on December 16, 2011.  Leslie,

738 S.E.2d at 49 n.1; (see also doc. no. 8-19, p. 17.)  After receiving an extra thirty days to

file his notice of appeal, Petitioner appealed to the Supreme Court of Georgia.  Leslie, 738

S.E.2d at 49 n.1.

Ms. Chapman also represented Petitioner on direct appeal and raised eight

enumerations of error:

(1)     Character evidence was improperly admitted and highly prejudicial.

(2)     Fundamental fairness was violated in sole defense case of
        misidentification when the trial court barred prior bad acts of the prime
        alternative candidate for [the victim's] murder.

(3)     Miranda warnings were not given when [Petitioner] became a suspect,
        leading to damaging testimony that was not suppressed and should
        have been suppressed at trial.

3

(4)     Autopsy and crime scene photos were improperly admitted and highly prejudicial.

(5)     Hearsay was improperly admitted and highly prejudicial.

(6)     [Petitioner] faced unreasonable and excessive delay on his Motion for New Trial.

(7)     The trial judge committed legal error by allowing such a deficient performance by trial counsel which was ineffective to the point of depriving [Petitioner] of his right to competent trial counsel under the 6th and 14th Amendments of the United States Constitution and the Georgia Constitution in that the trial judge's failure to assure that counsel was competent to defend [Petitioner] on these serious charges denied [Petitioner] the right to a fair trial and violated the trial judge's duty to assure that the trial was fair to [Petitioner].

(8)     The State failed to prove [Petitioner's] guilt beyond a reasonable doubt, the verdict was contrary to the evidence, and the verdict was contrary to the weight of the evidence.

(Doc. no. 8-19, pp. 26-27.)  On Februray 13, 2013, the Georgia Supreme Court rejected Petitioner's contentions and affirmed his convictions.  See Leslie, 738 S.E.2d at 49.

Petitioner then filed a state habeas corpus petition *pro se* on October 31, 2013, in Dooly County, and subsequently amended that state petition twice.  (Doc. nos. 8-1, 8-2, 8-3.) Although the state habeas court identified nineteen claims for relief, the Court herein identifies the six claims relevant to Petitioner's current federal petition:

(1)     Petitioner's convictions were obtained in violation of [the] Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because the evidence was insufficient to support the convictions.

(2)     Appellate counsel was ineffective for failing to raise on appeal that Petitioner was denied due process of law and the right to a fair trial when the court removed an essential element of the crime of malice murder from the jury instructions.

(3) Appellate counsel was ineffective for failing to raise the issue of the jury instruction regarding malice murder at the hearing on his amended motion for a new trial.

(4) Appellate counsel was ineffective for failing to raise in the motion for a new trial or on direct appeal that the trial court instructed the jury on arson in a manner not alleged in the indictment, resulting in an erroneous and misleading instruction. The arson jury charge was also not complete, thereby denying Petitioner due process of law and a fair trial.

(5) Appellate counsel was ineffective for filing to raise in the motion for a new trial or on direct appeal that Petitioner's convictions were obtained in violation of [the] Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because the evidence was insufficient to support the convictions.

(6) Appellate counsel was ineffective for failing to raise in the motion for a new trial or on direct appeal that trial counsel was ineffective for failing to object to testimony invading the province of the jury and which expressed the witness' opionion that the fire was arson.

(Doc. nos. 8-1, 8-2, 8-3.) The state habeas court conducted an evidentiary hearing on September 23, 2014, and Ms. Chapman testified at the hearing. (Doc. no. 8-6, pp. 8-41.) The state habeas court denied relief in a final order dated December 17, 2014. (Doc. no. 8-4.) The Georgia Supreme Court denied Petitioner's request for a certificate of probable cause to appeal on June 1, 2015. (Doc. no. 8-5.)

Petitioner then timely filed the above-captioned § 2254 petition *pro se*. (Doc. no. 1.) In the original and amended petitions, Petitioner raises the following grounds for relief:

(1) Petitioner received ineffective assistance of appellate counsel based on the failure to challenge the jury instruction that Georgia law does not require premeditation to convict on a malice murder charge.

(2) Petitioner received ineffective assistance of appellate counsel based on the failure to challenge his convictions on the basis of insufficient evidence.

(3)  The evidence presented at trial was insufficient to establish Petitioner's guilt beyond a reasonable doubt.

(4)  Petitioner received ineffective assistance of appellate counsel based on the failure to challenge the jury instruction on arson that was incomplete, as well as inconsistent with the charges in the indictment, which was erroneous and misleading, thereby allowing the jury to convict Petitioner in a manner not alleged in the indictment.

(5)  Petitioner received ineffective assistance of appellate counsel based on the failure to argue trial counsel was ineffective for failing to object to testimony that invaded the province of jury by expressing an opinion the fire was "arson."

(See generally doc. nos. 1, 6.)

## II.  STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 562 U.S. 86, 103 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential

standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citations omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is wrong; "even clear error will not suffice." White v. Woodall, 572 U.S. -, 134 S. Ct. 1697, 1702 (2014). Rather, the habeas petition must show the state court decision was "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Woods v. Donald, 575 U.S. -, 135 S. Ct. 1372, 1376 (2015) (a petitioner must show the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Reed v. Sec'y, Fla. Dep't of Corr., 767 F.3d 1252, 1260-61 (11th Cir. 2014); Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 563 U.S. at 181.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, § 2254(e)(1) requires the Court "to presume the correctness of state courts' factual findings" unless the habeas petitioner rebuts that presumption "with clear and convincing evidence." Nejad v. Att'y Gen., State of Ga., 830 F.3d 1280, 1289 (11th Cir. 2016) (citing Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007)); see also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review."). "The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1). . . . Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe v. Warden, 834 F.3d 1323, 1336 (11th Cir. 2016) (citing Wood v. Allen, 558 U.S. 290, 301 (2010)).

## III. DISCUSSION

### A. Petitioner Is Not Entitled to an Evidentiary Hearing or Appointment of Counsel.

Petitioner requests the Court hold an evidentiary hearing and appoint counsel to represent him. (Doc. no. 1, p. 49.) Both requests should be **DENIED**.

According to Rule 8 of the Rules Governing Section 2254 Cases, "[i]f the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted."  Under the applicable provision of AEDPA, if the petitioner has failed to develop the basis for a claim in state court, an evidentiary hearing on a given claim is prohibited unless the petitioner shows that:

> (A)  the claim relies on –
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).  A petitioner has "failed to develop the basis for a claim" – and consequently must satisfy the requirements of 28 U.S.C. § 2254(e)(2) to qualify for a hearing – if "petitioner or his counsel were [not] diligent in developing the record in the state habeas proceedings."  Ward v. Hall, 592 F.3d 1144, 1159 (11th Cir. 2010) (citing Williams v. Taylor, 529 U.S. 420, 437 (2000)).

Of note, "where a petitioner was granted an evidentiary hearing or other means of presenting evidence to the state court on the particular claim, and the petitioner failed to take full advantage of that hearing, despite being on notice of and having access to the potential evidence and having sufficient time to prepare for the hearing, that petitioner did not exercise

diligence in developing the factual foundation of his claim in state court." Pope v. Sec'y Dep't of Corr., 680 F.3d 1271, 1289 (11th Cir. 2012). In other words, Petitioner must show that he made a reasonable attempt, in light of the information available at the time, to investigate and pursue his claims in state court. Williams, 529 U.S. at 436. Moreover, "if a habeas petition does not allege enough specific facts that, if they were true, would warrant relief, the petitioner is not entitled to an evidentiary hearing." Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011).

Petitioner's claims in this federal petition were raised in his state habeas petition, on which Petitioner had a hearing. (See doc. nos. 8-6 through 8-19.) The state habeas hearing was continued three times, twice on Petitioner's motion. (Doc. no. 8-4, p. 2.) Thus, Petitioner had ample time to prepare and a full opportunity to develop any facts necessary to support his claims. Petitioner has not established he was denied the opportunity by the state court to develop his claims, and indeed, his federal claims are virtual verbatim recitations of claims raised as part of his nineteen-claim state habeas petition considered at the state habeas hearing. Moreover, Petitioner has not identified any evidence he seeks to introduce at a federal hearing that could change the outcome of his case. As discussed in detail below, he simply offers his interpretation of the evidence given a full exposition in the state courts. Accordingly, he is not entitled to a hearing on his federal petition.

As to the request for appointed counsel, there is no automatic constitutional right to counsel in habeas proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Webb, 565 F.3d 789, 794 (11th Cir. 2009) (citing Barbour v. Haley, 471 F.3d 1222, 1227 (11th Cir. 2006)); Hooks v. Wainwright, 775 F.2d 1433, 1438 (11th Cir.

1985).  Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under 28 U.S.C. § 2254, but such requests are discretionary when "due process or the 'interests of justice'" so require.  Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979)[1]; see also 28 U.S.C. § 2254(h) and Rule 8(c) of the Rules Governing Section 2254 Cases in the United States District Courts (authorizing appointment of counsel pursuant to 18 U.S.C. § 3006A if evidentiary hearing warranted).  Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]"  McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012).  In sum, "[e]xcept in rare and extraordinary cases where due process principles of fundamental fairness would be violated if counsel is not appointed," there is no federal constitutional right to appointed counsel.  Donald E. Wilkes, Jr., Federal Postconviction Remedies and Relief Handbook § 2.2, at 147 (2016 ed.) (citations omitted).  Petitioner does not identify, and the Court does not find any exceptional circumstances justifying the appointment of counsel.  Petitioner has filed extensive briefing which ably presents his claims to the Court, and his request for counsel should be denied.  See McCall, 495 F. App'x at 31.

**B.    This Court Defers to the Decision of the Georgia Supreme Court that the Evidence Adduced at Trial Was Sufficient to Authorize a Rational Trier of Fact to Find Petitioner Guilty of Murder and Arson Beyond a Reasonable Doubt.**

In Ground Three of the federal petition, Petitioner argues the evidence at trial was

_____

[1]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior the close of business on September 30, 1981.

insufficient to support his convictions and did not establish beyond a reasonable doubt he committed the crimes for which he was convicted. (Doc. no. 1, p. 46.) Petitioner raised this argument on direct appeal as follows: "The State failed to carry its burden of proof on all counts as there was insufficient evidence to support the convictions on any grounds, the verdict was contrary to the evidence in the case, and the verdict was contrary to the weight of the evidence presented." (Doc. no. 8-19, p. 49.) After summarizing the evidence – as set forth in detail in Part I, *infra* – the Georgia Supreme Court found the evidence sufficient to authorize a rational trier of fact to find Petitioner guilty beyond a reasonable doubt under Jackson v. Virginia, 443 U.S. 307 (1979). See Leslie, 738 S.E.2d at 45-46.

In Jackson, the Supreme Court held that the Fourteenth Amendment Due Process Clause mandates no person shall be convicted unless the evidence is sufficient to convince the trier of fact beyond a reasonable doubt of the existence of every element of the offense. 443 U.S. at 316. Thus, the relevant question on review of a sufficiency of the evidence claim is whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. The Court is also guided by AEDPA's mandate that factual determinations made by a state court are presumptively correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Tharpe, 834 F.3d at 1336.

Petitioner fails to explain how the state court's conclusion was an unreasonable application of Jackson. Petitioner claims the state court "did not conduct a complete Jackson

v. Virgina analysis with respect to each element" of his crimes, (doc. no. 9, p. 12), but he does not offer any evidence in support of this contention. Rather, relying primarily on non-binding First and Sixth Circuit case law, Petitioner spends pages of briefing offering *his interpretation* of the evidence, which he maintains was not sufficient to convict him. He argues much of the evidence against him was circumstantial and without direct evidence of his involvement, he could not have been found guilty. "However, it is not necessary for circumstantial evidence to exclude every conceivable hypothesis of a defendant innocence in order to authorize a conviction' only reasonable hypotheses must be excluded." Barela v. State, 517 S.E2d 321, 323 (Ga. 1999). At bottom, Petitioner simply complains the jury incorrectly evaluated the evidence.

On direct appeal, the appellate court has a duty to view the evidence in the light most favorable to the verdict. Jackson, 443 U.S. at 319; Barela, 517 S.E.2d at 323 ("[T]he [appellate] Court does not weigh or evaluate the evidence for itself, nor does it resolve conflicts concerning the evidence. Rather it examines the evidence in its entirety in a light most favorable to the verdict to determine whether any rational trier of fact could have found the accused guilty beyond a reasonable doubt.") The record before the Court provides ample support for the jury's verdict and for the state court's determination that the evidence was sufficient for a rational trier of fact to find Petitioner guilty beyond a reasonable doubt.

On April 22, 1999, firefighters responded to a car fire and discovered a burned body inside the vehicle once the fire had been put out. (Doc. no. 8-9, pp. 20-21 ("Tr. Trs.," pp. 175-176).) An autopsy revealed the victim was alive when the fire started but that she died from soot and smoke inhalation and thermal burns. (Doc. no. 8-9, pp. 56-57, 59 (Tr. Trs.,

211-12, 214).)   During Petitioner's interview with police on April 25, 1999, he had discoloration to his face which he explained as injuries from a motorcylcle accident and a back-firing carburetor.   (Doc. no. 8-9, p. 111; doc. no. 8-10, pp. 117-18 (Tr. Trs., pp. 266, 268, 395-96).)   The carburetor on Petitioner's vehicle did not show any evidence of a backfire, (doc. no. 8-11, p. 62 (Tr. Trs., p. 492)), and an expert testified the injuries on Petitioner's face were consistent with a flash fire – the type of fire that destroyed the murder victim's car.   (Doc. no. 8-11, pp. 65-71 (Tr. Trs., pp. 495-501).)   The murder victim's son testified his mother received a message from Petitioner on her pager approximately one hour before the burning car was discovered with the victim's body in the trunk.   (Doc. no. 8-13, pp. 74-79 (Tr. Trs., pp. 773-78).)

Petitioner testified at trial and denied he killed the victim, but he also had no corroboration for his offered alibi of attendance at dog fights in a different county from where the murder occurred.   (Doc. no. 8-14, pp. 77-91, 113-14 (Tr. Trs., pp. 894-906, 928-29).)   The jury also heard testimony that somebody else confessed to the murder.   (Doc. no. 8-14, pp. 120-21 (Tr. Trs., pp. 935-36).)   In the end, the jury weighed the conflicting evidence and determined Petitioner was guilty.

The Georgia Supreme Court did not unreasonably apply Jackson.   All of Petitioner's suggested interpretations of the evidence are points for closing arguments to the jury at trial and woefully inadequate to establish that the state court unreasonably applied Jackson or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented.   Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's

factual determinations. Petitioner has therefore not produced evidence rebutting the presumption that the Georgia Supreme Court's factual determinations are correct, and has not shown the state court was objectively unreasonable in its determination the evidence at trial was clearly sufficient for a jury to find guilt beyond a reasonable doubt. Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Three.

> ### C. Applying AEDPA Deference to the Ineffective Assistance of Counsel Claims that Were Previously Rejected by the State Courts, Federal Habeas Relief Is Not Warranted With Respect to Any of Petitioner's Remaining Claims.

> #### 1. Under <u>Strickland v. Washington</u>, Petitioner Bears a Heavy Burden on Ineffective Assistance of Counsel Claims.

Ineffective assistance of appellate counsel claims are subject to the two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264 (11th Cir. 2009). Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688. In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions." <u>Hagins v. United States</u>, 267 F.3d 1202, 1204-05 (11th Cir. 2001). Strategic decisions are entitled to a "heavy measure of deference." <u>Strickland</u>, 466 U.S. at 691. Indeed, "strategic choices are 'virtually unchallengeable.'" <u>Provenzano v. Singletary</u>, 148 F.3d 1327, 1332 (11th Cir. 1998) (citing <u>Strickland</u>, 466 U.S. at 690 and <u>Waters v. Thomas</u>, 46 F.3d 1506, 1522 (11th Cir. 1995) (*en banc*)). "[A] court should be highly deferential to those choices made by defense counsel in the conduct of a trial that are arguably dictated by a reasonable trial strategy." <u>Devier v.</u>

Zant, 3 F.3d 1445, 1450 (11th Cir. 1993).  To show that an attorney's choice of strategy is unreasonable, a petitioner must show that no competent counsel would have made such a choice.  Strickland, 466 U.S. at 690.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."  Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters, 46 F.3d at 1512).

A court, however, "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Strickland, 466 U.S. at 697; see Brooks v. Comm'r, Ala. Dep't of Corr., 719 F.3d 1292, 1301 (11th Cir. 2013).  Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  As the Eleventh Circuit has ruled, a petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some

conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted). Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

The Court's analysis is further guided by the principle that appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000); see also United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (rejecting ineffective assistance argument because "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). Nor does the Sixth Amendment require appellate advocates to raise every non-frivolous issue. Philmore, 575 F.3d at 1264.

In the context of an ineffective assistance claim that was previously rejected by a state court, the petitioner bears the even heavier burden of "show[ing] that the [state courts] applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002); see also Cave v. Sec'y for the Dep't of Corr., 638 F.3d 739, 748 (11th Cir. 2011) (noting that, where the state court has previously adjudicated a claim on the merits, the petitioner "has the additional burden of demonstrating that the state court's application of this demanding standard was not merely wrong, but objectively unreasonable"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly." Bell, 535 U.S. at 699. "In

short, an *unreasonable* application of federal law is different from an *incorrect* application of federal law." Barwick v. Sec'y, Fla. Dep't of Corr., 794 F.3d 1239, 1245 (11th Cir. 2015) (internal quotations and citations omitted).

Moreover, because "[t]he standards created by Strickland and § 2254(d) are both highly deferential, . . . when the two apply in tandem, review is doubly so." Richter, 562 U.S. at 105 (quotation marks and citations omitted); see also Yarborough v. Gentry, 540 U.S. 1, 4 (2003) (review of attorney performance is "highly deferential-and doubly deferential when it is conducted through the lens of federal habeas"). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment . . . . [F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (internal quotations and citations omitted). To obtain federal habeas relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. Put another way, "[t]he Strickland standard is a general one, so the range of reasonable applications is substantial." Richter, 562 U.S. at 105; see also Woods, 135 S. Ct. at 1376 ("AEDPA's standard is intentionally difficult to meet.").

### 2. The State Courts' Application of Strickland to Grounds One, Two, Four, and Five Was Not Objectively Unreasonable.

Petitioner asserts in Grounds One and Four of his § 2254 petition that his appellate counsel was ineffective for failing to challenge the trial court's jury instruction on malice murder and arson. Specifically, Petitioner claims counsel should have challenged (1) the

instruction that Georgia law does not require premeditation to convict on a malice murder charge, and (2) the incomplete instruction on arson that was also inconsistent with the charges in the indictment. (See doc. nos. 1, 6, 9, 14.) Contrary to the record evidence, Petitioner asserts in Ground Two he received ineffective assistance because counsel did not raise a sufficiency of the evidence argument. (Id.) In Ground Five, Petitioner asserts appellate counsel should have argued trial counsel was ineffective for failing to object to testimony that invaded the province of the jury regarding arson. (Id.)

The state habeas court found that Petitioner's ineffective assistance of appellate counsel claims lacked merit under Strickland, (doc. no. 8-4, pp. 7-10), and the Georgia Supreme Court denied the request for a CPC, an adjudication on the merits that warrants the deferential standard of review prescribed by § 2254(d). See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235, 1239 (11th Cir. 2016). Although the summary denial of the CPC by the Georgia Supreme Court is the final state court adjudication on the merits, id. at 1235, this Court may look to the previous opinion of the state habeas court "as one example of a reasonable application of law or determination of fact. Id. at 1239. In this way, the Court can use the previous opinion "as evidence that the relevant state court decision under review is reasonable." Id. As discussed below, there is no merit to Petitioner's claims that Ms. Chapman was ineffective when she did not raise on appeal the claims that the trial court violated Petitioner's due process rights with its jury charges on malice murder and arson, the evidence was insufficient to support his convictions, or trial counsel should have objected to trial testimony that allegedly invaded the province of the jury.

The state habeas court correctly identified the two-part Strickland analysis, and correctly decided Petitioner did not meet the deficient performance prong. (Doc. no. 8-4, pp. 9-10) ("This Court finds that Ms. Chapman's efforts were not deficient, but in fact were very competent. Accordingly, the Petitioner has failed to show that he received ineffective assistance of appellate counsel."). The Court rejects from the outset Petitioner's overarching argument the state habeas court incorrectly applied Strickland because it did not conduct the prejudice analysis. As Strickland makes clear, the ineffective assistance analysis is a two-part test, and failure to meet even one prong, results in denial of the claim. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.") Thus, the Court turns to the substance of the Strickland analysis.

### a. Testimony at State Habaeas Evidentiary Hearing

Attorney Holly Chapman represented Petitioner in his post-conviction proceedings. Ms. Chapman testified she was admitted to the Georgia Bar in January of 2009, and after initially working with a law firm in Atlanta, had been employed with the Public Defender's Office in Augusta, Georgia since June of 2009. (Doc. no. 8-6, p. 8.) At the time she represented Petitioner, although his case was her first appeal, she had handled hundreds of guilty pleas. (Id. at 8-9.) In preparation for the appeal, Ms. Chapman communicated with Petitioner via letter and in person, reviewed the trial transcript and the case file from trial counsel, spoke with both attorneys who represented Petitioner at trial, and spoke with many attorneys in her office, including the second in charge, to make sure she did not miss anything. (Id. at 9-10.) Based on her review of the transcript and under the supervision of

multiple, highly-experienced attorneys in her office, Ms. Chapman determined the most viable and meritorious issues to raise on appeal. (Id. at 11.)

Regarding the jury charges, Ms. Chapman did not see any issues she thought would be successful. (Id. at 12.) She particularly testified that even as of the state habeas hearing, she did not think Petitioner's interpretation of the premeditation requirement for malice murder or the legal definition of arson formed any viable appellate issue concerning the jury instructions. (Id. at 19-30.) Ms. Chapman also noted that she had raised a sufficiency of the evidence argument. (Id. at 34.) As to the issue of opinion testimony on arson from a witness, Investigator John Gray, allegedly invading the province of the jury, Ms. Chapman testified she considered the issue but did not find any case law to support the argument the witness had exceeded the bounds of allowable testimony. (Id. at 14.) Simply put, Petitioner's appellate counsel testified that, based upon her thorough research and review of Petitioner's trial and the jury charges, she believed she brought the most feasible claims on appeal.

### b. Malice Murder Instruction

Petitioner claims counsel should have challenged the malice murder instruction because it removed an essential element of the crime from the jury's consideration based on the statement that Georgia law does not require premeditation. The trial court instructed the jury, "A person commits murder when that person unlawfully, and with malice aforethought, either expressed or impled, causes the death of a human being." (Doc. no. 8-15, p. 68 (Tr. Trs., p. 1035).) Consistent with Georgia law, Wright v. State, 335 S.E.2d 857, 862 (Ga.

1985), and Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (4th ed.),

§ 2.10.10, the court also instructed,

> Georgia law does not require premeditation, and no particular length of time is required for malice to be generated in the mind of the person. It may be formed in a moment and instantly a mortal wound may be inflicted. Yet, if malice is in the mind of the accused at the time of the doing of the act or killing and moves the accused to do it, such is sufficient to constitute the homicide as murder.

(Doc. no. 8-15, pp. 68-69 (Tr. Trs., pp. 1035-36).)

The state courts found, as does this Court, there was no deficient performance under Strickland when Ms. Chapman chose not to raise this meritless issue. Petitioner, citing Caruthers v. State, 22 S.E.2d 11 (Ga. 1895), argues the general proposition that premeditation is an essential element of murder, and therefore the one phrase of the instruction stating premeditation is not necessary violates the tenets of United States v. Gaudin, 515 U.S. 506, 511 (1995), that the jury find him guilty of all elements of the crime with which he was charged. However, the state court's entire instruction, not simply isolated parts, must be considered. Cupp v. Naughten, 414 U.S. 141, 146–47 (1973).

As set forth above, the trial court properly instructed the jury on the essential elements of malice murder and the entire instruction explained how the jury was to evaluate the formulation of malice. See Brown v. State, 710 S.E.2d 751, 755 (Ga. 2011) (finding no error with challenged instruction taken almost verbatim from the Suggested Pattern Jury Instructions that was a correct statement of the law and adjusted to the evidence). Petitioner's attempt to find constitutional fault with Ms. Chapman's performance by focusing on one isolated phrase of the overall instruction fails to establish deficient performance, let

alone prejudice, under Strickland.    The state courts did not apply Strickland in an

unreasonable manner.    To the contrary, the state courts correctly applied Strickland in its

analysis of Petitioner's claim in Ground One.

### c.    Arson Instruction

Petitioner's assertion of error in Ground Four concerning the arson instruction is two-

fold:    not only was the charge allegedly incomplete, but also was inconsistent with the

charges in the indictment, and thus misleading.    Count Three of the indictment charged

Petitioner:

> With the offense of **ARSON IN THE FIRST DEGREE (§16-7-60)**
> for that the said accused, in the County of Richmond and State of Georgia, on
> the 22nd day of April, 1999, did knowingly damage by means of fire, a
> vehicle, occupied by Lori Hastings, under circumstances that it was reasonably
> foreseeable that human life might be endangered, contrary to the laws of said
> State, the good order, peace and dignity thereof.

(Doc. no. 8-6, p. 57.)

In pertinent part, the Georgia Statute on arson - under which Petitioner was indicted

and the Suggested Pattern Jury Instructions, Vol. II:  Criminal Cases (4th ed.), § 2.68.10, is

based - states:

> (a)    A person commits the offense of arson in the first degree when,
> by means of fire or explosive, he or she knowingly damages or
> knowingly causes, aids, abets, advises, encourages, hires, counsels, or
> procures another to damage:
>
> > (1)    Any dwelling house of another without his or her consent
> > or in which another has a security interest, including but
> > ont limited to a mortgage, a lien, or a conveyance to
> > secure debt, without the consent of both, whether it is
> > occupied, unoccupied, or vacant.
>
> . . . .

> (5) Any building, vehicle, railroad car, watercraft, aircraft, or other structure under such circumstances that is reasonably foreseeable that human life might be endangered.

O.C.G.A. § 16-7-60(a).

At the beginning of its jury charge, prior to the specific charge for each count of the indictment, the trial court instructed the jury:

> No person shall be convicted of any crime unless and until each element of the crime is proven beyond a reasonable doubt. The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt.

(Doc. no. 8-15, p. 59 (Tr. Trs., p. 1026).) Particular to arson, the court instructed in pertinent part:

> A person commits arson in the first degree when, by means of fire or explosive, he knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage any building, vehicle, railroad car, watercraft, or other structure under such circumstances that it is reasonably foreseeable that human life might be endangered.
>
> . . . .
>
> Now ladies and gentlemen of the jury, a person commits the offense of arson in the first degree when, by means of fire or explosive, he knowingly damages, or knowingly causes, aids, abets, advises, encourages, hires, counsels, or procures another to damage any building, vehicle, railroad car, watercraft, aircraft, or other structure under such circumstances that it is reasonably foreseeable that human life might be endangered.
>
> . . . . [T]he burden rests upon the State to prove beyond a reasonable doubt the burning of the vehicle described in the indictment, the fact that a criminal act was the cause of the burning, and that the accused was the person doing the burning, or was a party to it.

(Doc. no. 8-15, pp. 69-70 (Tr. Trs., pp. 1036-37).)

Petitioner argues Ms. Chapman should have challenged the instructions as violative of his due process rights because the language varied from the indictment charge of knowingly damaging by fire a vehicle occupied by the victim and did not include the entirety of the arson statute. (Doc. no. 1, pp. 47-48; doc. no. 6, pp. 12-13.) In particular, at one point, the jury instructions included the phrase "knowingly causes," rather than solely "knowingly damages" as stated in the indictment. (Doc. no. 1, pp. 47-48; doc. no. 6, pp. 12-13.) Petitioner also argues the instructions improperly charged the jury it could convict based on a finding the fire was reasonably foreseeable to endanger human life, rather than damaging a vehicle occupied by the victim as charged in the indictment. (Doc. no. 1, pp. 47-48, 54-55; doc. no. 6, pp. 12-13.) Petitioner also alleges error because the instructions included the provision that he could be convicted if the jury found he was "a party to" the burning rather than, as stated in the indictment, he did the burning. (Doc. no. 1, pp. 47-48.)

The state courts found, as does this Court, there was no deficient performance under Strickland when Ms. Chapman chose not to raise these meritless issues concerning the arson charge. Petitioner, citing Dukes v. State, 457 S.E.2d 556 (Ga. 1995), and Stanford v. Stewart, 554 S.E.2d 480 (Ga. 2001), argues the general proposition that charging a jury in a manner differing from the charges as described in the indictment may violate due process. However, as the Georgia Supreme Court recently summarized:

> Even where a jury instruction is defective in that the trial court instructs the jury that an offense could be committed by other statutory methods than the one method charged in the indictment . . . such a defect is cured where, as here, "the court provides the jury with the indictment and instructs jurors that the burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."

Flournoy v. State, 755 S.E.2d 777, 782 (Ga. 2014) (quoting Williams v. Kelley, 728 S.E.2d 666, 668 (Ga. 2012)). Georgia courts have applied this rule specifically in the context of arson in the first degree. See Sharpe v. State, 728 S.E.2d 217, 221 (Ga. 2012).

Here, unlike Dukes, *supra*, the trial court gave a limiting instruction that the State had the burden "to prove beyond a reasonable doubt the burning of the vehicle described in the indictment." (Doc. no. 8-15, p. 70 (Tr. Trs., p. 1037).) Indeed, the court in Dukes repeatedly emphasized the lack of a limiting instruction as the key to finding a due process violation. 457 S.E.2d at 558 ("For example, if a jury charge recites the entire statutory definition of a crime and the indictment does not, the deviation may violate due process *unless* a limiting instruction is given." (emphasis added)). Not only did the trial court in Petitioner's case give a limiting instruction, but Ms. Chapman testified at the habeas hearing that she did not see any problem with the arson charge because she did not see any evidence presented at trial "that would suggest that the jury might have found that you committed an arson in a different way, other than the one alleged in the indictment." (Doc. no. 8-6, p. 25; see also p. 30 (explaining "there was nothing at trial to suggest that there was another story that would not be consistent with" indictment).)

Petitioner has not identified any such evidence that could have caused confusion, and the lack of confusing evidence at trial to suggest Petitioner could have committed arson by some means other than charged in the indictment distinguishes the second case cited by Petitioner, Stanford, *supra*. In Stanford, the petitioner had been charged with causing damage to a dwelling house occupied by one particular person, but the evidence at trial

showed the victim's apartment was located in a multi-unit complex, other tenants were displaced from their apartments during the fire, and the prosecutor argued in closing that the arson endangered other occupants of the complex and responding emergency personnel. 554 S.E.2d at 481. In the wake of presentation of evidence and argument about methods of committing arson beyond that charged in the indictment, the trial court charged the jury on multiple methods of arson upon which the petitioner could be convicted. Id. at 481-82. Here, however, Petitioner has not identified anything to contradict Ms. Chapman's testimony at the habeas hearing that the record does not support a finding the jury might have found Petitioner committed an arson in a different way other than what was charged in the indictment.

Even if the trial court gave a broader definition of arson in the jury charge than charged in the indictment, any prejudice was remedied by the jury instruction the State had the burden to prove every material allegation in the indictment and each essential element of the crime beyond a reasonable doubt. Moreover, the trial court not only read the indictment to the jury at the beginning of charge but also sent out a copy with the jury during its deliberation. (Doc. no. 8-15, pp. 57-58, 73 (Tr. Trs., pp. 1024-25, 1040).) The state courts did not apply Strickland in an unreasonable manner. To the contrary, the state courts correctly applied Strickland in its analysis of Petitioner's claims in Ground Four.

### d. Failure to Challenge Sufficiency of the Evidence Supporting Petitioner's Convictions

In Ground Two, Petitioner argues Ms. Chapman was ineffective for failing to challenge the sufficiency of the evidence supporting his convictions. This argument falters

from the outset because Ms. Chapman raised a sufficiency of the evidence argument. (See doc. no. 8-19, pp. 49-50.) As described in detail in Sections I and III(B), *supra*, that claim was rejected, see Leslie, 738 S.E.2d at 45-46, and is entitled to AEDPA deference. As the claim was raised, there can be no ineffective assistance based on the faulty premise that Ms. Chapman did not argue the point.

However, for the sake of completeness, the Court analyzes this argument based on the implied contention that Ms. Chapman provided constitutionally ineffective assistance because she did not raise the issue as Petitioner preferred. The Court's interpretation of the argument is confirmed by Petitioner's questioning of Ms. Chapman at the state habeas hearing as follows:

> First of all, Ms. Chapman, I contend my conviction was obtained in violation of the 5th and 6th, 14th Amendments to the Constitution because of evidence insufficient to support my conviction. With that being said, I also further contend that you were ineffective for not raising that particular, as you said initially, that particular issue on appeal that I had drafted.

(Doc. no. 8-6, p. 16.)

Ms. Chapman testified Petitioner's motion for a new trial was "unusually long," and she ended up having to cut some issues in favor of ones that she felt might be viewed more favorably. (Id. at 35.) The basis of Petitioner's argument on this point appears to be the same premise that has already been debunked in Part III(B), *supra*, specifically he believes the jury improperly weighed the evidence and he wanted Ms. Chapman to present more detail on his interpretation of the evidence. However, as explained above, post-conviction, the evidence must be viewed in the light most favorable to the verdict. Jackson, 443 U.S. at 319; Barela, 517 S.E.2d at 323. Ms. Chapman's strategic decisions on what issues to raise

and how to raise them are choices owed a heavy measure of defence, <u>Provenzano</u>, 148 F.3d at 1332, and Petitioner has not shown no competent counsel would have made such choices in pursuing Petitioner's appeal, <u>see</u> <u>Strickland</u>, 466 U.S. at 690.

The state courts did not apply <u>Strickland</u> in an unreasonable manner.  To the contrary, the state courts correctly applied <u>Strickland</u> in its analysis of Petitioner's claim in Ground Two.

**e.      Failure to Appeal Trial Counsel Not Objecting to Testimony Allegedly Invading the Province of the Jury**

In Ground Five, Petitioner argues Ms. Chapman provided constitutionally ineffective assistance by not challenging trial counsel's failure to object to the testimony of Sergeant John H. Gray, an investigator with the Richmond County Sheriff's Office who investigated the crime scene.  According to Petitioner, Sgt. Gray should not have been allowed to testify as to his impression of the crime scene as showing "definite signs this was arson."  (Doc. no. 8-9, p. 22 (Tr. Trs., p. 177).)  The testimony came as the prosecutor asked Sgt. Gray why he asked for an arson investigator upon his arrival at the crime scene.  Sgt. Gray testified:

> A:      That's normal procedure, and I've been –I've worked quite a few years with the arson investigators, and based on the preliminary facts I was given and that there was a body in this vehicle, it's just pretty much routine.  As I approached that vehicle, it even became more apparent that there was definite signs this was an arson.
>
> Q:      Why?
>
> A:      The vehicle itself was a solid color vehicle.  As I observed the vehicle, you had - - it was kind of a greenish-blue, if I remember correctly. You had the greenish-blue trunk, and then you had a greenish-blue hood. Well, the interior area, or the top section of it was white ash which definitely gave the indication that the origin of the fire was in the interior of the vehicle.

(Id.)  The record shows that at the time of the 1999 crime scene investigation at issue, Sgt. Gray had worked with the arson investigation unit of the Richmond County Fire Department for nearly twenty years and had close to 300 hours of schooling in the area of arson.  (Doc. no. 8-9, pp. 22-23 (Tr. Trs., pp. 177-78).)

Petitioner cites Carter v. State, 598 S.E.2d 76 (Ga. App. 2004), wherein the petitioner objected his mother and aunt were not allowed to testify as to their opinion that he was not one of the perpetrators depicted in the videotape of the crime scene.  598 S.E. 2d at 78.  The court of appeals ruled, "And while expert opinion testimony is admissible, even as to the ultimate issue, such opinion evidence is admissible only 'where the conclusion of the expert is one which [the] jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman.'"  Id.  A mother or an aunt offering testimony about the identity of a person depicted in a video is an observation not beyond the grasp of the average layman.  In contrast, here, an investigator with almost twenty years of experience and 300 hours of arson training testified that his initial assessment of the crime scene showed signs of arson.  This testimony is clearly beyond the grasp of a layperson.  Petitioner's second case, Mitchell v. State, 641 S.E.2d 674, 677 (Ga. App. 2007), is likewise distinguishable because it involved identification testimony from a police officer based on his previous acquaintance with the defendant offered to establish a fact the jurors could decide for themselves based on the evidence presented.

Ms. Chapman testified at the habeas hearing she considered this issue but determined it was within Sgt. Gray's purview to testify about arson.  (Doc. no. 8-6, p. 15.)  Indeed, the record confirms Sgt. Gray had received specialized training in arson.  Petitioner's inapposite

case law does not establish Ms. Chapman's evaluation was deficient. The state courts did not apply <u>Strickland</u> in an unreasonable manner. To the contrary, the state courts correctly applied <u>Strickland</u> in its analysis of Petitioner's claim in Ground Five.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED** without holding an evidentiary hearing or appointing counsel, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 14th day of November, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA